December 29, 1978

## 78-70    MEMORANDUM OPINION FOR THE ACTING GENERAL COUNSEL, NUCLEAR REGULATORY COMMISSION

### Former Officers and Employees—Conflict of Interest (18 U.S.C. § 207)—Contract—Disqualification Connected With Former Duties or Official Responsibilities

This responds to your request for our opinion on a matter calling for an interpretation of 18 U.S.C. § 207, establishing postemployment restrictions on Federal employees. The relevant facts are as follows:

Mr. C, a geologist employed in the Commission's Office of Nuclear Reactor Regulation (NRR), serves on a Commission task force charged with developing data to assist the Commission in formulating regulations concerning the long-term storage of high-level nuclear waste. In that capacity he reported in 1977 to appropriate Commission officials that the Commission needed additional data on certain geological issues, which it was not equipped to obtain.

In March of that year he met in his official capacity with representatives of a laboratory, a Government contractor, and of a private consulting firm. They discussed the data that C believed was required. He then submitted a memorandum to the task force leader listing certain NRR geoscience research requirements and subsequently submitted more detailed specifications.

During 1977 and 1978, C met several times with the Commission's Office of Nuclear Material Safety and Safeguards (NMSS), the office with primary responsibility for nuclear waste management, and reiterated his concern that the needed geological research was not being conducted. In September 1978, NMSS decided that the research was indeed necessary and asked the laboratory to undertake it, which it has recently agreed to do by contract. The consulting firm, subcontractor of the laboratory, anticipates that it will be requested by the laboratory to do the research.

In October 1978, the consulting firm offered C a position to begin in January 1979, contingent upon his availability to work on the subcontract. Should the laboratory subcontract the performance of technical and scientific components

of the contract to the consulting firm, C would represent the consulting firm in meetings with the NRC's scientific staff to exchange scientific information.

We understand that C played no role in selecting the laboratory to do the research, and that the laboratory has not yet begun the work on the project.

The legal issue is whether § 207 prohibits C from acting for the consulting firm in connection with its performance of the subcontract. We conclude that C would not violate § 207 if his activities are confined as discussed below:

Section 207 reads in relevant part as follows:

> (a) Whoever, having been an officer or employee of the executive branch of the United States Government, of any independent agency of the United States, or of the District of Columbia, including a special Government employee, after his employment has ceased, knowingly acts as agent or attorney for anyone other than the United States in connection with any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter involving a specific party or parties in which the United States is a party or has a direct and substantial interest and in which he participated personally and substantially as an officer or employee, through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise, while so employed, . . ..
>
> (b) * * * * *
>
> Shall be fined not more than $10,000 or imprisoned for not more than two years, or both: *Provided*, That nothing in subsection (a) or (b) prevents a former officer or employee, including a former special Government employee, with outstanding scientific or technological qualifications from acting as attorney or agent or appearing personally in connection with a particular matter in a scientific or technological field if the head of the department or agency concerned with the matter shall make a certification in writing, published in the Federal Register, that the national interest would be served by such action or appearance by the former officer or employee.[1]

I.

We consider first whether, if C accepts the position, he would be required to act as an agent or attorney for the consulting firm in connection with a particular matter in which he personally and substantially participated while a Government employee.

This issue concerns the degree of the connection C had with the laboratory contract, *i.e.*, whether he had the requisite personal and substantial participation therein. He concededly participated in the proposal which led to the Commission's offering the laboratory the contract. He was primarily responsi-

---

[1]The section has been recently amended by the Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1824. The amendment, however, is not material here.

ble for the Commission's requesting an outside firm to do the research.[2] He was further intimately involved in the decision concerning the nature of the required research. However, he participated only in the inchoate stage of what would later develop into a contract.

Nevertheless, we are of the opinion that § 207 covers such participation. Implicit in § 207 is the notion that one may not, as a Government employee, having participated personally and substantially even in the preliminary stages of a particular contract, thereafter leave the Government to act as an agent or attorney for a private party with respect to the contract. Were this not so, the policies underlying that provision would be frustrated. Section 207 was primarily intended to prevent situations in which a former Government employee could use inside information or his influence with respect to a matter on which he worked as a Government employee. Much of the work with respect to a particular matter is accomplished before the matter reaches its final stage. For example, an attorney might conduct an exhaustive investigation whether the facts and the law warrant the Government's filing a contemplated lawsuit. Further, he might recommend that the lawsuit be brought. If he could at that point, before the actual filing of the case, leave the Government and contend that he was not barred by § 207 because his work did not extend to participation in an actual "judicial or other proceeding" the purpose of § 207 would be undermined. The same holds true with respect to the preliminary steps leading to a contract. Thus, § 207, if its purpose is to be served, should be read to include personal and substantial participation in the preliminary stages of particular matters.

Moreover, the express terms of § 207 deal with preliminary aspects of particular matters. The section covers participation through decision, approval, disapproval, recommendation, the rendering of advice, investigation, etc. Such activity is frequently associated with preliminary aspects. Indeed, in this case C rendered advice, made a recommendation, and conducted an investigation with respect to the matter that eventually resulted in the laboratory contract.

For these reasons, we conclude that C's activities are covered by § 207.

## II.

We now turn to the question whether Mr. C's duties with the consulting firm, as you describe them, would violate § 207. Although the language of § 207(a) is quite broad and encompassing, there is no doubt that C may work on the consulting firm's subcontract if he limits himself to in-house work not involving his contact with the Government. *See* the comment in the Attorney General's 1963 Interpretive Memorandum (reprinted at 18 U.S.C. § 201,

---

[2]We note at the outset that the consulting firm's status as a subcontractor in no way excuses Mr. C from § 207's prohibitions.

note).[3] However, the consulting firm job offer is contingent upon C's availability to meet with the Commission's scientific staff "for the purpose of exchanging scientific information being developed under the contract." We believe that in doing so C would be acting as the consulting firm's "agent." But not all communications between a former Government employee and his agency necessarily constitute acting as an agent within the proscriptions of § 207.

In the context of a contract, a former employee acts as the "agent" of a non-Federal person or entity when he urges or requests the Government to take or refrain from taking action or otherwise acts on behalf of that person or entity in dealings with the Government pertaining to the provisions or performance of the contract as to which the contractor and the Government may have differing or potentially differing views. This interpretation, requiring an ingredient of at least inchoate adversariness, is reflected in the list of particular matters to which the ban in § 207 applies: "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter involving a specific party or parties," in which the United States is a party or has a direct and substantial interest. Aside from a contract, the other listed matters appear to be pregnant with at least some adversariness (in the sense of urging a point of view) in all their aspects. A contract between the Government and a private person or entity, on the other hand, may extend over a long period of time and involve numerous contracts between governmental and contractor personnel that jointly facilitate performance of the contract and have no adversarial aspect. Use of the term "contract" in § 207 was not intended to apply to all such communications.

Moreover, each mention of a former Government employee's dealing with Government contracts that we have found in § 207's legislative history indicates that the harm to be remedied is the negotiation of contractual terms, the securing of the contract, the prosecution of a contract claim, or otherwise handling a contractual dispute. *See, e.g.*, Senate Report No. 2213, 87th Cong., 2d sess., at 17; Hearings before the Antitrust Subcommittee (Subcommittee No. 5) of the House Judiciary Committee, 87th Cong., 1st sess., Series 3 (1961), on *Federal Conflict of Interest Legislation*, at 71, 72, 75, 84, 86, and 101. *See also* the Attorney General's 1963 Interpretive Memorandum, quoted in footnote 3, *supra* containing the illustrative example of a "dispute over the terms of the contract"; *see also* Federal Personnel Manual, Chapter 735, Appendix C, at 4. Thus, there is nothing in § 207's legislative history to suggest that it was intended to cover contacts with the Government not

---

[3] "An individual who has left an agency to accept private employment may, for example, immediately perform technical work in his company's plant in relation to a contract for which he had official responsibility—or, for that matter, in relation to one he helped the agency to negotiate. On the other hand, he is forbidden for a year, in the first case, to appear personally before the agency as the agent or attorney of his company in connection with a dispute over the terms of the contract. And, he may at no time appear personally before the agency or otherwise act as agent or attorney for his company in such dispute if he helped negoitate the contract."

involving controversial matters with respect to a contract. Section 207 is essentially concerned with preventing the use of influence and inside information by a former Government employee. Hearings before the Senate Judiciary Committee, 87th Cong., 2d sess. (1962), on *Conflict of Interest,* at 21; 1961 Hearings at 71-72; S. Rept. No. 2213, *supra,* at 5, 13; H. Rept. No. 748, 87th Cong., 1st sess., at 4. Roswell Perkins, in his article, *The New Conflict of Interest Law,* 76 Harv. L. Rev. 113, 1121 (1963), stated that the policies underlying the post-employment restrictions of the conflicts of interest law are as follows: a ban against "switching sides"; protection against use of influence derived from personal friendships or past association; and protection against unfair use of inside information acquired while in the Government. Implicit in all of those is the notion that some step is sought to be taken however minor in relation to the overall contract.[4] This does not, of course, mean that the restriction in § 207 is limited to formal appearances or proceedings. The provision, in our view, does not reach informal meetings, correspondence, or conversations with agency officials in which the former employee urged the position of a contractor with respect to an aspect of the contract in which the position of the contractor and that of the employee's agency were potentially divergent. Moreover, the prohibition against acting as the contractor's "agent" should not be confined to major disputes, renegotiation, or the like. Requests for extensions of interim deadlines or work orders, nonroutine requests for instructions or information from the agency, suggestions about new directions on even relatively minor portions of the contract, and explanation or justification of the manner in which the contractor has proceeded or intends to proceed would all be barred; they involve at least potentially divergent views of the Government and the contractor on subsidiary issues or an implicit representation by the agent that the contractor is in compliance with contract requirements.

However, one who delivered finished material in a truck to the Government on behalf of a contractor was not acting as an "agent" in a representational capacity, as contemplated by § 207. A similarly ministerial delivery or furnishing of scientific data to a Government agency on behalf of a contractor is likewise outside the scope of § 207. In the present instance, C would not be removed from the statutory bar merely because his communications with the Commission may relate to scientific or technological matters. Because of his substantial responsibility for administration of the subcontract, many of his

---

[4] This interpretation is even clearer in the recent amendment to § 207(a) (*see* footnote 1, *supra*) which provides sanctions for one who "knowingly acts as agent or attorney for, *or otherwise represents,* any other person (except the United States), in any formal or informal appearances before, *or with the intent to influence,* makes any oral or written communication on behalf of any other person (except the United States)" in matters in which he participated personally and substantially. [Emphasis added.] The reference to "representation" and "influence" suggests a situation involving differing positions on the part of the Government and the contractor. It was also implicit in 18 U.S.C. § 284, the predecessor of 18 U.S.C. § 207, which proscribed acting as "a counsel, attorney or agent for prosecution" of claims against the United States. While § 207 expanded the category of covered matters beyond "claims," it did not, in our view, alter the implicit element of at least some divergence or potential divergence of views.

communications—even those that are essentially routine or ministerial furnishing of information—may be instinct with the more subtle type of influence that in our view, the statute proscribes, equally with representations made in more obvious adversarial situations. If his activities are limited as described above, it is our opinion that Mr. C may proceed without violating the prohibitions of § 207.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
